## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANTHONY ERODICI,            :
          Petitioner,     :
                    :
v.                      :     CIVIL NO.: 3:09-cv-1997(JCH)
                    :
UNITED STATES OF AMERICA,  :
          Respondent.    :     MAY 20, 2010

### RULING RE: MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (Doc. No. 2)

Petitioner Anthony Erodici, a federal prisoner, is currently serving a 144-month sentence following his plea of guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of sections 841(a)(1), 841(b)(1)(A) and 846 of Title 21 of the United States Code.  Erodici has moved this court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Erodici alleges that his sentencing counsel was ineffective for failing to object to the playing of phone calls during sentencing and failing to note alleged discrepancies between reports of the proffer sessions and what was actually said, that his sentence was disproportionate to the major players in the conspiracy, and that his counsel was ineffective in failing to argue for point reductions for safety valve and acceptance of responsibility.  See Mot. to Vacate at 3-6 (Doc. No. 2).  For the reasons that follow, the court denies his Motion.

## I.    BACKGROUND

Erodici was arrested on February 19, 2005, and on March 8, he was indicted along with 12 co-conspirators.  Erodici was charged in Count One with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in Count Three with

1

possession with intent to distribute 500 grams or more of cocaine, and in Counts Six, Seven, and Eight with possession of three firearms during and in relation to a narcotics trafficking offense.

On February 28 and March 21, 2005, Erodici met with the government to discuss the possibility of cooperation.  The FBI agents involved in these meetings generated reports known as FBI 302s.  The government felt that Erodici was not completely forthcoming, that he minimized his involvement in the conspiracy, and that he provided only inculpatory testimony that was already established by the evidence.  The government did not enter into a cooperation agreement with Erodici.

Erodici pleaded guilty to Count One on August 30, 2006.  In the plea agreement Erodici agreed that the quantity attributable to him was 5 or more kilograms of cocaine, and the government reserved its right to argue at sentencing that Erodici was responsible for 15 kilograms or more of cocaine.  See Plea Agreement (Doc. No. 465), United States v. Erodici, 05-cr-53(AHN), at 6.  The government also reserved its right to make any recommendations with regard to acceptance of responsibility at the sentencing hearing.  See id.  The parties agreed that two levels should be added to the base level offense for possession of firearms under U.S.S.G. § 2D1.1(b)(1).  See id.  At the change of plea hearing, Erodici agreed that the quantity attributable to him was five kilograms or more of cocaine.  See Change of Plea Hearing Transcript ("Plea Tr.")(Doc. No. 473), United States v. Erodici, 05-cr-53(AHN), at 19:10-15.  Erodici also acknowledged that no one had made any promises to him other than those in the plea agreement, and that he entered his plea freely and because he was guilty.  See Plea Tr. at 19:25-20:10.

The probation officer found during the presentence interview that Erodici's version of events conflicted with what he had stated on the record during his plea, and thus did not recommend a reduction for acceptance of responsibility.  The presentence report calculated a sentencing range of 188 to 235 months.  After his plea, Erodici continued to assert that he was eligible for safety valve consideration and that the quantity attributable to him was less than five kilograms.

Judge Nevas held two separate status conferences to determine whether Erodici had entered his plea agreement voluntarily, and whether he was violating the plea agreement by continuing to assert his arguments regarding safety valve eligibility. Erodici stated on the record at the second status hearing that he was not seeking to withdraw his plea and that he agreed that the quantity he was responsible was five kilograms of cocaine.  See Jun 6, 2007 Status Conference Transcript ("Status Conf. Tr.")(Doc. No. 668), United States v. Erodici, 05-cr-53(AHN), at 13:3-13, 25:11-14.  At that status conference, Attorney Frank Riccio, who represented Erodici, informed the court that he might have to testify as to what was said during the proffer sessions, and thus he could not continue as Erodici's counsel.  See id. at 7:9-21.  Attorney Riccio moved to withdraw at the end of that conference, and he was replaced by Attorney Jon Einhorn, who was present at the status conference.

A contested sentencing hearing was held on October 15, 2007.  The government presented evidence regarding quantity, safety-valve eligibility, and acceptance of responsibility.  After the government's presentation, Erodici's counsel stated that, in consideration of his client's best interests, he would not be presenting evidence, and that he would no longer contest his safety-valve eligibility, the accuracy of the reports of

3

the proffer session, or that the guns were in connection with the narcotics offense, and that he would instead proceed to argument on the sentencing.  See Transcript of Sentencing Hearing ("Sentencing Tr.")(Doc. No. 789), United States v. Erodici, 05-cr-53(AHN), at 205:22-206:17.  Erodici was sentenced to 144 months of imprisonment.  See Judgment (Doc. 697), United States v. Erodici, 05-cr-53(AHN).

Erodici appealed his sentence on the grounds that both of his counsel were ineffective and that his sentence was substantively unreasonable because it did not avoid sentencing disparity between Erodici and his co-defendants.  The Second Circuit dismissed without prejudice Erodici's ineffectiveness claims and held that his sentence was substantively reasonable. See Mandate of USCA (Doc. No. 802), United States v. Erodici, 05-cr-53(AHN), at 2.

## II.    STANDARD OF REVIEW

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  Ciak v. U.S., 59 F.3d 296, 301 (2d Cir. 1995) (internal citation omitted). "As a general rule, relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Napoli v. U.S., 32 F.3d 31, 35 (2d Cir. 1994) (internal citations and quotation marks omitted).  Because Erodici is proceeding pro se, the court must read his "submissions broadly so as to determine whether they raise any colorable legal claims."  Parisi v. U.S., 529 F.3d 134, 139 (2d Cir. 2008) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 145-46 (2d Cir. 2002)).

4

### III.    DISCUSSION

In his Petition, Erodici makes three arguments: (1) that Erodici's sentencing counsel was ineffective because counsel was unprepared, in that counsel did not object to the playing of phone calls during the sentencing hearing which had not been previously disclosed, and because counsel did not put on evidence attacking the accuracy of the reports of the proffer sessions; (2) that Erodici's sentence was disproportionate when compared to his co-conspirators because he "was the first to cooperate" and that his first attorney was not called as a witness regarding the proffer session reports; and (3) that Erodici "was told that [he] would be able to receive point reduction from safety valve and acceptance of responsibility," but the issues were abandoned.  See Mot. to Vacate at 3-6.

### A.    Procedural Default

Generally, a petitioner may not present a claim on habeas if he did not properly raise it on direct review. See Reed v. Farley, 512 U.S. 339, 354 (1994).  Erodici did not bring the claim that he was promised he would receive sentence reductions for safety valve and acceptance of responsibility in his direct appeal.  Thus, Erodici is barred from raising this claim at this stage.  However, he is not completely procedurally defaulted on the issue because the court, reading his Petition broadly, determines that he has made a claim of ineffective assistance of counsel with regard the abandonment of the arguments about Erodici's safety valve and acceptance of responsibility reductions. See infra at 7.  The Supreme Court has determined that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."  Massaro v. U.S., 538

5

U.S. 500, 509 (2003).  In fact, section 2255 is the preferred method for bringing a claim

of ineffective assistance of counsel because it is "the forum best suited to developing

the facts necessary to determining the adequacy of representation . . . ."  Id. at 505.

Therefore, Erodici is not procedurally defaulted from bringing a claim of ineffective

assistance with regard to the safety-valve and acceptance of responsibility point

reductions.

      B.    <u>Direct Appeal</u>

"It is well established that a § 2255 petition cannot be used to relitigate questions

which were raised and considered on direct appeal."  <u>United States v. Sanin</u>, 252 F.3d

79, 83 (2d Cir. 2001).  In Ground Two of his Petition, Erodici argues that his "sentence

was disproportionate to the major players in the conspiracy."  <u>See</u> Mot. to Vacate at 4.

That argument was raised on direct appeal.[1]  <u>See</u> Br. for Appellant, Ex. 1 to Resp.'s

Opp., at 32.  The Second Circuit addressed this issue and held that the sentence was

"substantively reasonable."  <u>See</u> Mandate of USCA at 2.  Therefore, Erodici is

procedurally barred from relitigating this question.  To the extent that in Ground Two

Erodici is arguing that his lawyer was ineffective in failing to call his first attorney to the

stand to discuss the proffer sessions, the court will address that argument along with

the arguments of ineffectiveness that Erodici makes in Ground One of his Petition.  <u>See</u>

<u>infra</u> at 8-11.

---

[1] Erodici states that his "appellate attorney did not raise these issues despite my request to do so."  <u>See</u> Mot. to Vacate at 5.  However, the sentencing disparities between Erodici and his co-conspirators was one of two points raised on direct appeal, and the only issue considered by the Second Circuit in determining that Erodici's sentence was substantively reasonable.  <u>See</u> Mandate of USCA at 2.

C.    Ineffective Assistance of Counsel

In Ground One of his Petition, Erodici argues that his counsel was ineffective at sentencing, listing a number of errors that counsel allegedly made.  See Mot. to Vacate at 3-4.  In Ground Two, Erodici makes the same argument that he made on direct appeal, see supra at 6, but also argues that his "first attorney challenged contents of the 302 of my meetings [with the government] and was present to testify but was not called."  See Mot. to Vacate at 5.  Because this is a *pro se* motion, the court must read Kuperman's Petition "broadly."  See Parisi, 529 F.3d at 139.  Therefore, the court will consider the issue of failing to call his first attorney to testify about the proffer sessions as a claim for ineffective assistance of counsel at the sentencing hearing, and will address it along with the other arguments Erodici made regarding ineffective assistance in Ground One.

Erodici also argues in Ground Three that he "was told that [he] would be able to receive point reduction from safety valve and acceptance of responsibility.  Both issues were abandoned.  First time offender and plead guilty."  See Mot. to Vacate at 6.  Reading this argument broadly, Erodici could be arguing that his lawyer was ineffective in withdrawing the argument that he was eligible for safety valve and acceptance of responsibility reductions, and the court will proceed as though Erodici made an ineffective assistance argument on this point.

To prevail on a claim for ineffective assistance of counsel, Erodici must satisfy the two-part test set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, Erodici must show that his counsel's representation "fell below an objective standard of reasonableness."  See id. at 688.  He must also show

7

that counsel's deficient performance caused prejudice to the petitioner.  See id. at 692.

The Strickland standard is a rigorous one.  Indeed, "[t]he Sixth Amendment guarantees

reasonable competence, not perfect advocacy judged with the benefit of hindsight."

Yarborough v. Gentry, 540 U.S. 1, 8 (2003).  As the Supreme Court has held, there

exists a "strong presumption" that a counsel's performance is reasonable for Sixth

Amendment purposes.  Kimmelman v. Morrison, 477 U.S. 365, 381(1986) (citing

Strickland, 466 U.S. at 688-89).  The Petitioner must satisfy both prongs.  See id. at

697.

       1.     Phone Calls and Proffer Sessions – Grounds One and Two

Erodici argues that his counsel was ineffective at sentencing because he was

unprepared in that he "was not familiar with prior disclosure of recor[d]ed phone calls

and did not object to playing of phone calls during sentencing which had not been

previously disclosed;" that counsel "did not put on any evidence regarding serious

discrepancies between reports of contents of proffer sessions and what was actually

said in the presence of my first attorney who had his own notes;" and that his first

attorney, who "challenged the contents of the 302 [reports] of my [proffer] meetings and

was present to testify was not called."  See Mot. to Vacate at 4-5.  In this court's view,

Erodici has established neither prejudice nor that Attorney Einhorn's conduct fell below

an objective standard of reasonableness.

A petitioner "bears the burden of proving that counsel's representation was

unreasonable under the prevailing professional norms."  Kimmelman, 477 U.S. at 381.

The reasonableness of counsel's performance is to be viewed from the perspective of

counsel, and "the standard of review is highly deferential." See id.  With regard to

Erodici's first complaint – that counsel did not object to the playing of phone calls – the Second Circuit has stated that "failure to make a meritless argument does not amount to ineffective assistance."  See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999).  Any objection to the phone calls would have been fruitless.  Erodici argues that the phone calls were not disclosed, but the government disputes that and has provided the court with a letter date July 20, 2006, in which the existence of those telephone calls was disclosed to defense counsel.  See July 20, 2006 letter, Ex. 5 to Resp.'s Opp., at 1.  Therefore, defense counsel could not make a successful objection that the phone calls were not disclosed.  Additionally, the content of the phone calls was relevant.  At the sentencing hearing, Erodici was contesting the amount of cocaine attributable to him.  The phone calls provided the court with evidence of the extent of Erodici's involvement in the conspiracy, and thus the calls provided evidence on the issue before the court. Erodici has provided no further evidence or argument as to why his counsel should have objected to the phone calls.  Erodici's counsel was well within the bounds of professional norms when he did not make a meritless objection to the government's use of the intercepted phone calls during the sentencing hearing.

Additionally, Erodici cannot prove that the phone calls were prejudicial.  To establish prejudice, Erodici "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  See Strickland, 466 U.S. at 694.  If the objection had been made, it was meritless and would have been overruled.  Further, the phone calls were played during the testimony of Juan Marrero, one of Erodici's co-conspirators.  See Sentencing Tr. at

9

170:20-193:20.  Marrero confirmed and translated what was said on the phone calls.

See id.  Even if Erodici's counsel had objected and the calls had not been played, the

testimony of Marrero, as well as FBI Agent Michael Syrax, who detailed the

investigation of Erodici, was more than enough for the court to find by a preponderance

that at least 15 kilograms of cocaine were attributable to Erodici.  Therefore, Erodici has

not demonstrated, to any degree, that the results of his proceeding would have been

different had his counsel objected to the phone calls, and thus he has not demonstrated

prejudice.

Erodici also argued that his counsel did not offer evidence of discrepancies

between the proffer sessions and the reports of the proffer sessions, and in Ground

Two, Erodici argued that his counsel was ineffective because he did not put Erodici's

first attorney on the stand to discuss the proffer sessions.  Presumably, Erodici wanted

to contest the reports of the proffer sessions to demonstrate that he had provided the

government with all the information he had concerning the offense, in order to be

eligible for safety valve consideration.  However, along with a finding about the

truthfulness of Erodici's proffer, in order to be eligible for safety valve consideration, the

court would have had to find that Erodici did not "possess a firearm . . . in connection

with the offense."  See U.S.S.G. § 5C1.2(a)(2).

The Second Circuit has held that, to show that the firearm was possessed "in

connection with the offense," the government must establish the existence of a specific

"nexus" between the charged firearm and the charged drug selling operation.  United

States v. Snow, 462 F.3d 55, 62 (2d Cir. 2006).  Courts look to various factors in

determining whether there exists a "nexus" between the charged firearm and the

charged drug selling operation, including "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." Id. at 62 n.6.   At Erodici's sentencing, the government introduced evidence that two of Erodici's guns were found in the same drawer as drug paraphernalia and were coated with cocaine residue, and that the guns were loaded.  See Sentencing Tr. at 86:6-87:13.  There was more than enough evidence presented on the guns alone for the court to find that Erodici was not eligible for safety valve consideration, regardless of any discrepancies Erodici's counsel could have demonstrated in the proffer reports. Therefore, Erodici cannot demonstrate any prejudice with regard to his counsel's failure to attack the proffer reports at sentencing.  Because Erodici must satisfy both prongs of the Strickland test to demonstrate ineffectiveness of counsel, the court need not address the performance prong of this argument.  The court denies Erodici's Motion on the grounds of ineffective assistance of counsel with regard to the phone calls and proffer session reports.

    2.  Safety Valve and Acceptance of Responsibility – Ground Three

    Erodici argues that he was told that he would receive point reductions for safety valve and for acceptance of responsibility, but that these issues were "abandoned." This court has construed this argument as a claim of ineffective assistance of counsel with regard to the abandonment of the arguments about Erodici's safety valve and acceptance of responsibility reductions.  See supra at 7.  The court first notes that the government presented enough evidence at sentencing for the court to find that Erodici

11

was not eligible for safety valve consideration because of his gun possession, and therefore Erodici's counsel was not unreasonable in dropping the safety valve argument as a strategic matter.  See supra at 11.  "[A]n action or omission that might be considered sound trial strategy [does not] constitute ineffective assistance."  See Arena, 180 F.3d at 396-97.  Additionally, because there was enough evidence for the court to find that Erodici was not eligible for the safety valve, Erodici cannot demonstrate that his counsel's abandonment of the argument was prejudicial to him.

With regard to acceptance of responsibility, Erodici's counsel did argue for that reduction at sentencing.  See Sentencing Tr. at 208:5-6; 216:23-217:22; 218:12-17. Therefore, Erodici cannot argue that his performance fell below professional norms. Additionally, there was enough information before the court to find that Erodici had not accepted his responsibility.  Erodici denied his responsibility to the probation officer in the presentence interview, denied his responsibility for the quantity he had agreed to in the plea agreement on multiple occasions, and even denied at the sentencing hearing itself Marrero's testimony that Erodici had knowingly stored and packaged cocaine. See Sentencing Tr. at 219:22-221:12; 225:25-226:21; 228:23-229:1. Therefore, even if Erodici's counsel's arguments for acceptance of responsibility were in some way below professional norms, Erodici cannot prove that such failure was in any way prejudicial to him.  Therefore, the court denies Erodici's Motion on the grounds of ineffective assistance of counsel with regard to the safety valve and acceptance of responsibility sentencing reductions.

D.    CONCLUSION

For the foregoing reasons, the court **DENIES** the petitioner's Motion to Vacate,

Set Aside or Correct Sentence (Doc. No. 2).  Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, any appeal from this Order would not be taken in good faith and a certificate of appealability shall not issue.  The Clerk is directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 20th day of May, 2010.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge